ALEXANDER THOMPSON, as Executor, etc., of ELSIE R. HOWARD, Deceased, Respondent, v. THE TRAVELERS INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Appellant.

Fourth Department, October 19, 1921.

Insurance — life insurance — agent of life insurance company has authority to deliver policy without payment of premium and while insured is ill — delivery waives provision in application requiring payment of premium at or before delivery of policy, and that insured be in good health at that time — statement to agent relative to insured's health not fraudulent.

In an action to recover upon a life insurance policy, it appeared that the defendant's agent, clothed with apparent authority to act for it, upon receipt of the policy, a signed receipt for first premium, and a new application, all prepared by the defendant, took them to the office of the insured and was there told by his secretary that the insured was ill at home with a bad cold; that on the same day the insured signed the new application and retained the policy and receipt for the premium, and the application was handed to the defendant's agent who was told that he could procure the check for the premium on the next day; that on the next day the defendant's agent told the insured's secretary that he could not accept the check and would like the policy back and on that evening the insured died of influenza without having paid the first premium.

Held, on all the evidence that the agent had power and authority as such to deliver the policy without payment of the premium and while the insured was ill, and that by so doing he waived the provision in the application which required the payment of the premium at or before the delivery of the policy, and the provision that the insured be in good health at that time;

That the jury were justified in finding that the statement to the defendant's agent that the insured was suffering from a bad cold was a truthful statement of his condition as understood by all the parties interested at that time, and was not misleading, incomplete or fraudulent.

MOTION for reargument of an appeal by the defendant, The Travelers Insurance Company of Hartford, Connecticut, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Chautauqua on the 5th day of January, 1921, upon the verdict of a jury, and also from an order entered in said clerk's office on the 7th day of January, 1921, denying defendant's motion for a new trial made upon the minutes. (See 198 App. Div. 964.)

*Frank C. Ferguson*, for the appellant.

*Thrasher, Cole & Clapp* and *Arthur S. Tennant* [*Louis L. Thrasher* of counsel], for the respondent.

HUBBS, J.:

This action was brought to recover upon a life insurance policy in the sum of $10,000, issued upon the life of Elverton I. Howard. The beneficiary named in the policy was his wife, Elsie R. Howard. A. E. Backman was an agent of the defendant company at Westfield, N. Y. He solicited the insurance in question. He furnished the blank application on December 17, 1919. It was signed by Howard and the agent's certificate was filled out and signed by Backman as agent. After the blank application was filled out it was delivered to Backman as agent, and was forwarded by him as agent to the company. Thereafter, and on January 16, 1920, the company issued the policy at its home office. Before that time Howard had passed a medical examination. The amount of the premium was uncertain and had to be fixed by the company at its office at the time when the policy was issued. The premium named in the application was $367.10. The premium fixed by the company at the home office was $430. At the time the company prepared the policy it also prepared a receipt for the first premium of $430. It also prepared a new application, which was the same as the original except that in it the higher premium was named. The company mailed to Backman, its agent at Westfield, the executed policy, the receipt for $430 duly signed, and the new application to be signed by Howard. A copy of the new application was copied into the policy with the signature of Howard as though it had actually been signed by him. Backman received the policy, receipt and new application on the twenty-first day of January and took them to the office of Howard. He there met Miss Morganstern, Howard's secretary, and inquired of her where Howard was. She stated to him that Howard was ill at home with a bad cold. He stated to her that he was there to deliver the policy. He delivered the policy, the signed receipt for the first premium and the new application, and told her to have Howard sign the application. That afternoon Miss Morganstern took all the papers to

Howard's home and gave them to Miss Crawford, a nurse, who gave them to Howard. He signed the new application and delivered it to the nurse, and retained the policy and the receipt for the premium. Miss Morganstern received the signed application from the nurse and on her way back to the office met Backman. She handed to him the signed application and asked him if there was anything else wanted. He said: " Yes, was anything said about a check? " She said that there had not been, but that if he would come to the office the next day she would get him the check, that Mrs. Howard had power to sign a check and that if he would call at the office she would get one signed and give it to him. He stated that he would come for it. She was at the office all of the next morning, but Backman did not call for the check. This was on January twenty-second. The policy was delivered to Howard on the twenty-first. On the morning of Friday, January twenty-third, Miss Morganstern met Backman on the street and he told her he could not accept the check and would like the policy back. That evening, January twenty-third, Howard died. On the following Wednesday Mrs. Howard died and this action was brought by her executor.

On the twenty-first, when Miss Morganstern told Backman, the agent, that Howard was ill with a hard cold she was stating the fact as it was understood. Not until January twenty-second, after the delivery of the policy, did the attending physician appreciate that Howard was suffering from anything more than a severe cold. On the morning of the twenty-second his temperature rose suddenly to above 104 degrees. The physician was then able to diagnose his trouble and decided that he was suffering from influenza infection. Backman, at the time when he delivered the policy, had all the information any one had regarding Howard's condition. The premium on the policy was never paid, and the company immediately after Howard's death denied all liability.

The case was tried by the plaintiff on the theory that Backman, the agent, had power and authority, as agent, to deliver the policy without payment of the premium and while the insured was ill, and that by doing so he waived the provision in the application which required the payment of

the premium at or before the delivery of the policy and, further, that the assured be in good health at that time. The application contained the following clause: " and that the contract issued hereupon shall not take effect unless the first premium shall be actually paid while I am in good health."

The application contained, also, the following clause:

" Modifications, etc.— No agent can make, alter or discharge this contract or extend the time for payment of premiums, nor can this contract be varied or altered or its conditions waived or extended in any respect, except by the written agreement of the company, in compliance with the law of the State in which the contract is issued, signed by the president, or one of the vice-presidents or secretaries, whose authority will not be delegated."

The policy provided that it was issued in consideration of the signed application which was attached to it.

The agent's commission, in paragraph 6 thereof, read as follows:

" 6. The Agent has no authority to make, alter, vary, or discharge any contract, or extend the time of payment of premiums; or to waive or extend any obligation or condition; or to take payment of premiums other than in current funds; or to incur any liability in behalf of the Company; or to deliver any policy unless the applicant therefor is at the time in good health and insurable condition, or to receive any money due or to become due to the Company, except on policies and receipts sent to him for collection."

The defendant contended that under the provisions of the application and policy Backman did not have power or authority to waive the provisions of the application and policy, and, further, that the evidence did not show any such waiver even if he had power to waive.

The assured believed, when he signed the application and delivered it to the nurse, that he was insured and so stated. Backman testified that when Miss Morganstern delivered to him the signed application he accepted it. The trial justice submitted the case to the jury in accordance with the plaintiff's theory and left the jury to determine, as matters of fact, the following questions:

*First.* What was the intention of the parties when the

policy was delivered to Mr. Howard on the Wednesday preceding his death? Was the policy delivered as a completed contract or was it the intention of Mr. Backman and Howard that the policy was simply handed over for the purpose of inspection?

*Second.* Did Backman have the authority, notwithstanding the clause contained in the application and policy, to deliver it as a completed contract and waive the payment of the first premium and the condition in regard to good health?

*Third.* At the time Backman delivered the policy to Miss Morganstern to take to Howard, did he know the condition of Mr. Howard's health as it was understood by him and by his attending physician to be at that time?

The court charged the jury that if it found those propositions in favor of the plaintiff its verdict should be for the plaintiff,. and the jury so found.

I think the evidence justified the jury in finding that when Miss Morganstern told Backman that Howard was suffering from a bad cold it was a truthful statement and a statement of his condition as understood by all of the parties interested at that time; that it was not misleading, incomplete or fraudulent, but that it was a fair, honest and truthful statement, and that after hearing it Backman had all the information possessed by any one at the time. In addition to that statement, it appears that on the sixteenth of January Backman met Howard at an entertainment and noticed that he was coughing badly and seemed to have a hard cold. That was the date on which the policy was executed at the home office.

Within the meaning of the decision in the case of *Ames* v. *Manhattan Life Insurance Co.* (40 App. Div. 465; affd., 167 N. Y. 584 on opinion below) the agent in possession of the information imparted by Miss Morganstern was in position to waive the condition of Howard's health, even though at that moment he was in a more serious condition and was in fact suffering from some other disease. The question of the intent with which Backman delivered the policy and Howard received it was peculiarly a question of fact for the determination of the jury.

The question of whether or not Backman, at the time, had power and authority to deliver the policy and waive the

payment of the first premium and the provision in regard to Howard's health depends upon the construction to be placed upon the case last cited, the case of *McClelland* v. *Mutual Life Insurance Co.* (217 N. Y. 336) and the case of *Whipple* v. *Prudential Insurance Co.* (222 id. 39).

The appellant relies principally upon the case of *Russell* v. *Prudential Insurance Co.* (176 N. Y. 178). While there are certain statements in the opinion which standing alone might sustain the appellant's position, the effect of those statements is limited by the decision in the two cases last cited, in which the Court of Appeals has explained the *Russell* case and limited it, and has pointed out just what that case was intended to hold. At page 43, in the *Whipple* case, Judge COLLIN said: " The crucial point in the *Russell* case was that the trial justice erred in holding that, *as a matter of law* * * * the general agent Tennant was authorized to waive the right of the defendant to deem the policy ineffective until the payment of the first premium."

In the *Russell* case the trial court had held as a matter of law that there was a waiver by Tennant, and the defendant in that case had asked to have the question of Tennant's authority to waive submitted to the jury as a question of fact. The holding of the Court of Appeals was that the question was one of fact to be determined by the jury and not one of law to be determined by the court, and the judgment was reversed and a new trial granted. The *Whipple* case is authority for the proposition that an agent, if he possesses sufficient power and authority, may, by the delivery of the policy, waive the payment of the first premium.

The *McClelland* case is authority for the proposition that, under the same circumstances, such an agent may waive the provision in the policy that the assured must be in good health at the time of the delivery of the contract, and the *Ames* case is to the same effect. If the facts in this case are such as to present a question of fact as to Backman's authority to waive, within the meaning of those decisions, then, within the meaning of those decisions, the proper disposition of the case was made by the trial court and the judgment must be affirmed. The reasoning of the court in those cases is clearly stated by Judge COLLIN in the *Whipple* case, where he said:

" The following reasoning is sound, impeccable and established in this jurisdiction: The application is a proposition or request for the contract of insurance between the applicant and the company, the statements of which upon its acceptance by the company bind the applicant and create correlative rights to the company. The company may relinquish or waive any of those rights. The obligations or rights of the applicant or of the company, arising through the application and its acceptance, cannot be restricted or affected by any provision of the policy, as a contract, until the policy has taken effect and become a contract between the parties. The provision of the policy last quoted by us or an analogous provision of a policy has no contractual restrictive power in or upon the right or freedom of the company to waive the stipulation that the policy shall not take effect until the first premium is paid in full, because it is not until the waiver has been made (the premium remaining unpaid) that the policy becomes a contract between the parties or binding, as a whole or as to individual provisions, as a contract, upon the insured."

In my judgment the *Whipple* case is not authority for holding that Backman, under the facts in this case, had power to waive those provisions of the policy. In the *Whipple* case the agent, who was held to have waived the provision of the policy, was a district manager, and to my mind that implies greater power and authority than is possessed by a local country agent. I think, however, that the case of *Ames* v. *Manhattan Life Insurance Co.* and the case of *McClelland* v. *Mutual Life Insurance Co.* furnish sufficient authority for the course adopted by the trial judge. In the *Ames* case (at p. 468) Mr. Justice BARRETT quotes with approval from the opinion of Mr. Justice RUMSEY, delivered upon a previous appeal in the same case (31 App. Div. 180), where he said: " It is fairly to be inferred, from all the testimony, that Zimmerman was the general agent of the company to take applications and deliver the policies; and, if he was such agent, his act in waiving a condition was undoubtedly within his power."

In the *McClelland* case it would seem that the agent who was held to have made the waiver was simply a special agent

in the office of the defendant at Syracuse. In that case the trial justice directed a verdict for the plaintiff, thereby holding as a matter of law that Becker, the agent, had power to make the waiver and to make an effectual delivery of the policy although the assured, at the time of the delivery, was at home sick with the grippe. This holding would seem to be in conflict with the holding in the *Russell* case, but it is the latest expression of the Court of Appeals, the directed verdict was affirmed, and the opinion expressly reaffirms the doctrine of the *Ames* case and explains the *Russell* case, and the opinion states that an examination of the record in the *Ames* case discloses that that case cannot be distinguished from the *McClelland* case on the ground that the agent in the *Ames* case was a general agent. Judge HOGAN said (at p. 340): " On the contrary, the nature of his agency was identical with the agency of Becker in this case. In both cases the insurance was solicited, the application signed, the policy delivered and premium received by the respective agents."

In the *McClelland* case and in the *Ames* case the only evidence, apparently, upon which the jury based the finding that the agent had power to waive was that the agent solicited the insurance, that he signed the application, that he delivered the policy which was sent to him by the company and that in other cases where he received applications for insurance he delivered the policies and received the premiums, and it was said that the possession of the policy offered a presumption that the agent was authorized to deliver it in accordance with the custom that prevailed in all cases where he had secured the applications, and it was further said: " He was thus clothed with apparent authority to represent the defendant, and information imparted to him may be imputed to the defendant represented by him."

In this case it appears that Backman solicited the application, furnished the blank, received the application from Howard, signed it as agent of the company, delivered it to the company, arranged for the medical examination, received from the company a receipt for the first premium duly executed, also a new application to be signed and the policy executed ready for delivery. Backman testified that he customarily solicited insurance for the defendant company; that it was

the custom of the company when a policy was issued at the home office to forward it to him for delivery and with each policy to forward an official receipt for the first premium. Backman acted under a written authority in which it was provided that he agreed to devote his entire time to the interests of the company, to canvass in his territory, to collect and account for all premiums, and to forward applications and report his collections to the company's branch office. This evidence seems to me to bring this case squarely within the decisions above referred to.

I advise, therefore, that the motion for a reargument be denied and that the judgment and order be affirmed, with costs.

All concur, LAMBERT, J., not sitting.

Motion for reargument denied, with ten dollars costs. Motion for leave to appeal to Court of Appeals denied.